IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WILLIE GRANT, #151823, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIV. A. NO. 23-00461-KD-N |
| ) | |
| LIEUTENANT REYNOLDS, *et al.,* ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Willie Grant, an Alabama prison inmate proceeding without an attorney (*pro se*) and without prepayment of fees (*in forma pauperis*), filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). This matter is before the Court on Defendants' motion for summary judgment.[1] (Doc. 23). For the reasons discussed herein, it is **RECOMMENDED** that this motion be **GRANTED** and that this action be dismissed in its entirety.

**I.     Background and Factual Allegations.**

Plaintiff claims that, on August 15. 2023, while incarcerated at Camden Community-Based Facility/Community Work Center ("Camden Work Release"), Defendants Lieutenant Edward E. Reynolds, Captain Gretchen Rooker, and Sergeant Darryl Perryman[2] arbitrarily forced him to strip naked and expose himself in front of other inmates and made all inmates "get

---

[1]     The Court converted the Answer and Special Report filed by Defendants Edward E. Reynolds, Gretchen Rooker, and Darryl Perryman to a motion for summary judgment. (*See* Doc. 20). Plaintiff was ordered to file a response to Defendants' motion (*see* Doc. 23) but, to date, he has not responded.

[2]     Darryl Perryman was identified in Plaintiff's complaint as Sgt. Peraman. (*See* Doc. 1).

naked." (Doc. 1 at 4). He claims being made to strip in front of other inmates was disgraceful and done "for no good cause" in violation of his spiritual morality and his Eighth and Fourteenth Amendment rights. (*Id*.). Plaintiff seeks monetary relief from the defendants and any other relief the Court deems just and fair. (Doc. 1 at 7).

Defendants deny Plaintiff's complaint allegations, assert immunity defenses, and testify that they have no knowledge of the alleged incident. (*See* Doc. 20; *see also* Docs. 20-1; 20-2; 20-3). Defendants further testify that Plaintiff never reported the incident alleged in his complaint (nor did any other inmate), and that they did not, nor have they ever ordered any inmate to get naked in front of other inmates. (Docs. 20-1; 20-2; 20-3). Defendants contend that a search of the Inmate Record System shows no incident report, duty officer report, body chart, or disciplinary record was located regarding the alleged incident. (*Id*.). Defendants maintain that if an incident had occurred as alleged by Plaintiff, Alabama Department of Corrections' policy requires the completion of a duty officer report, incident report, body chart and disciplinary charge. (*Id*.). Defendants further maintain, however, that there are times at Camden Work Release when inmates are strip searched, namely when inmates return from work. (*Id*.). When these searches are conducted, they are performed behind a partition with a sheet in the chapel, two inmates at a time, one inmate at each end of the chapel. (*Id*.). The partitions are not facing each other, so the inmates cannot see one another. (*Id*.).

Given the disparity of the facts put forth by the parties, the Court ordered Plaintiff to respond to Defendants' Special Report, specifically advising Plaintiff to "describe the entire incident in detail, including what occurred before and after the incident, where did the incident occur, who witnessed the incident, etc." and instructing Plaintiff that his response should be a sworn, signed, and dated statement. (Doc. 21 at 1-2). Plaintiff's filed response, however, was not

sworn to and did not provide any of the details the Court directed.[3] (*See* Doc. 22). Instead, Plaintiff claimed that on the day of the incident, Sergeant Perryman informed Lieutenant Reynolds not to conduct the strip search "due to PREA protocol," but Lieutenant Reynolds specified that Captain Rooker instructed them to continue the search. (*Id*. at 1-2). Next, Plaintiff questioned how Defendants could claim no knowledge of the incident but they "continued to explain what happened on that day in question instead. How could [they] know what exactly happened that day of August 15, 2023 if nothing ever happened?" (*Id*. at 2). Last, Plaintiff requested polygraph testing for all parties to prove the asserted facts. (*Id*.).

After review of Plaintiff response to Defendants' Special Report, the Court converted Defendants' Answer and Special Report to a Motion for Summary Judgment. (Doc. 23). Plaintiff was informed of the consequences of summary judgment and given an opportunity to respond to the motion but, to date, he has not filed in opposition to the motion. (*See Id*.). Accordingly, this motion for summary judgment is now ripe for consideration.

## II.     Summary Judgment Standard.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary

---

[3] Unsworn statements may not be considered by the Court in evaluating a motion for summary judgment. *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003). While there is an exception to this rule, Plaintiff fails to meet it. An unsworn statement or declaration may be used to defeat summary judgement if the declarant signs and dates the document as and declares the statements made to be true under penalty of perjury. *See* 28 U.S.C. § 1746(2). Plaintiff's response is not dated, nor was it made under the penalties of perjury. Therefore, Plaintiff has failed to comply with § 1746 and his response may not be considered at this stage. *Roy v. Ivy*, 53 F.4th 1338, 1348-50 (11th Cir. 2022) ("[W]e conclude that Roy's unsworn statement does not comply with § 1746 and the district court correctly did not consider Roy's unsworn statement, even though he labeled it as an "affidavit.").

judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc.*, 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. *Garczynski*, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to the material facts.'" *Id*. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id*. "[I]f the record taken as a whole could lead a rational trier of fact to find for the nonmoving party," then a genuine issue of material fact exists. *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th

4

Cir. 2004). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion and Analysis.

For purposes of this motion, the Court takes as true Plaintiff's complaint allegation that on the orders of Defendants, he was made to strip and was viewed naked in the presence of Defendants Reynolds and Perryman and other inmates. Plaintiff appears to be alleging Defendants violated his right to bodily privacy, however he has presented no facts that indicate this incident rose to the level of a constitutional violation.

### A. Constitutional Claims.

It is well settled that under the Fourth Amendment "inmates, both convicted prisoners and pretrial detainees, retain some [constitutional] rights upon commitment to a corrections facility," including limited rights to privacy. *Bell v. Wolfish,* 441 U.S. 520, 558 (1979); *see also Harris v. Thigpen,* 941 F.2d 1495, 1513 n.26 (11th Cir. 1991) (recognizing that prisoners "retain certain fundamental rights of privacy," while noting the precise nature and scope of that privacy right was unclear). Indeed, this circuit's precedent "clearly establish[es] the principle that, absent a legitimate reason, individuals maintain a right to bodily privacy, in particular the right not to have their genitals exposed to onlookers." *Mitchell v. Stewart*, 608 F. App'x 730, 735 (11th Cir. 2015) (citations omitted). The scope of this right, however, continues to be considered by courts

on a case-by-case basis. *Fortner v. Thomas,* 983 F.2d 1024, 1030 (11th Cir.1993).

The Eleventh Circuit first upheld a prisoner's right to bodily privacy in *Fortner*, finding the defendant officers' actions were clearly unlawful, where male prisoners claimed that female officers solicited them to "masturbate and otherwise exhibit their genitals for the female officers' viewing." 983 F.2d at 1027. And again, in *Boxer X v. Harris*, the court found that a male prisoner stated a claim for violation of his privacy rights where he alleged that a female officer solicited him to masturbate for her viewing. 437 F.3d 1107, 1111 (11th Cir. 2006). Notably, courts in this circuit have found involuntary exposure of one's genitals to rise to a constitutional violation only in limited situations – that is, those that involved a sexual component. *Fortner*, 983 F.2d at 1030 (noting involuntary exposure of one's genitals "in the presence of people of the other sex may be especially demeaning and humiliating"). This essential element is totally lacking from Plaintiff's complaint, as Plaintiff does not allege that he was made to disrobe in front of female guards or female inmates. Nor does Plaintiff indicate that he was made to strip for any sexual purpose. Consequently, Plaintiff cannot state a constitutional claim for being viewed naked by inmates or officers of the same sex without facts much more egregious than here. *See, e.g., Harrison v. Carter*, No. 4:13-CV-00011-CLS, 2013 WL 2443845, at *3 (N.D. Ala. May 30, 2013) ("There is no specific right of privacy for prisoners with respect to their being forced to disrobe in front of members of the same sex."); *Williams v. Martinez*, No. 09-cv-02387-BNB, 2010 WL 330313, at *2 (D. Colo. Jan. 20, 2010) ("[C]ourts have not extended such a limited right [to bodily privacy] to a prisoner being briefly viewed by prisoners of the same sex."); *but c.f., Evans v. Stephens,* 407 F.3d 1272, 1281-82 (11th Cir. 2005) (A strip and cavity search was deemed unreasonable and unconstitutional based on the totality of the circumstances, where plaintiff prisoners were strip searched in a broom closet, ridiculed, physical force was

used, and each plaintiff was penetrated by an object in front of the other.).

Indeed, the law is clear that there is nothing inherently unreasonable about strip searches and visual body cavity searches, *Powell v. Barrett*, 541 F.3d 1298, 1305-06 (11th Cir. 2008), as long as they are conducted in a reasonable manner. *Evans v. Stephens*, 407 F.3d 1272, 1281 (11th Cir. 2005). In the prison context, this requires courts to "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell v. Wolfish,* 441 U.S. 520, 559 (1979). Because Plaintiff has put forth no allegations showing he was made to strip in an abusive manner or for sexual reasons, his claim fails to rise to a constitutional violation, including under the Eighth Amendment, as asserted by Plaintiff.[4]

The Eighth Amendment protects prisoners against "cruel and unusual punishments," U.S. Const. amend. VII, and forbids the unnecessary and wanton infliction of pain. *Hope v. Pelzer* 536 U.S. 730, 737 (2002) (quotation marks and citation omitted). The Eighth Amendment also requires prison officials to provide adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Based on the factual allegations of the complaint, Plaintiff falls drastically short of establishing a claim. Plaintiff alleges a single occurrence of being made to strip in the view of other inmates. He does not claim that he was denied a basic need; nor that

---

[4] To the extent Plaintiff attempts to bring this claim under the Fourteenth Amendment, his claim fails. The Supreme Court has made clear that where the Constitution provides for a specific protection, courts must assess claims under that explicit provision and not the generalized notion of the Fourteenth Amendment's due process provision. *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 842–43 (1998) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." (internal quotation marks omitted)). Because Plaintiff's claims are covered under Fourth or Eighth Amendment standards, he does not have an additional substantive due process claim. And because Plaintiff describes a single, isolated incident and produces no allegations of a prison policy, he has failed to state a procedural due process claim.

7

he was exposed for any prolonged length of time or for sexual or retaliatory reasons; nor does he claim that he was harassed, threatened, abused, or injured.[5] Accordingly, Plaintiff's allegations fall drastically short of the egregious conduct necessary to state a constitutional claim. *See Caffey v. Limestone County, AL*, 243 F. App'x 505 (11th Cir. 2007) (recognizing "that the involuntary exposure of [inmates'] genitals in the presence of members of the other sex states a claim for violation of privacy rights . . . but does not state a claim for an Eighth Amendment violation where there is only *de minimis* injury.") (internal citations omitted).

### B. Immunity from Liability.

Plaintiff has failed to establish a claim under any theory. To the extent Plaintiff has sued Defendants, who are employees of the Alabama Department of Corrections, in their official capacity, the Supreme Court determined in *Will v. Mich. Dept. of State Police*, that state officials are not considered persons subject to suit for money damages under § 1983 when sued in their official capacity. 491 U.S. 58 (1989). Thus, the Plaintiff's claims for damages against Defendants in their official capacities are barred by Eleventh Amendment immunity and should be dismissed. *See also Alden v. Maine*, 527 U.S. 706 (1999).

To the extent Defendants are sued in their individual capacities, Defendants are afforded the defense of qualified immunity. Qualified immunity protects government officials performing discretionary functions from liability for civil damages. *Wilson v. Layne,* 526 U.S. 603, 609

---

[5] While the lack of serious injury does not preclude an Eighth Amendment claim, the extent of injury suffered is a factor to be considered in determining whether the use of force was wanton and unnecessary. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided the use of that force is not of a sort repugnant to the conscience of mankind.") (internal quotation marks and parenthesis omitted).

(1999). "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." *Harbert Intern., Inc. v. James,* 157 F.3d 1271, 1282 (11th Cir.1998) (citing *Lenz v. Winburn,* 51 F.3d 1540, 1545 (11th Cir.1995)). The Court finds that it is apparent from the allegations in Plaintiff's Complaint, as well as Defendants' answer and special report, that Defendants were acting within the scope of their discretionary authority at the time of the incident. "Once the governmental officials have established that they were acting within their discretionary authority, the burden shifts to [Plaintiff] to show that qualified immunity is not appropriate." *Id.*

The Supreme Court has mandated a two-step analysis for resolving qualified immunity claims. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, a court must decide whether the facts that a plaintiff has alleged "show the [defendant's] conduct violated a constitutional right." *Id.* Second, the court must decide "whether the right was clearly established." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. Courts have discretion whether to address first the existence of a constitutional violation or the clearly established nature of the right allegedly violated. *Pearson*, 555 U.S. at 236; *accord Reichle v. Howards*, 566 U.S. 658, 663 (2012). For the reasons previously discussed, Plaintiff has failed to establish constitutional violation, much less has he shown that Defendants' conduct violated a clearly established right.

Accordingly, Defendants are entitled to qualified immunity on the claims asserted against them.

  **IV.  Conclusion.**

Based on the foregoing, the undersigned **RECOMMENDS** that summary judgment should be **GRANTED**, and the claims against Defendants Reynolds, Rooker, and Perryman should be dismissed in their entirety.

The instructions below contain important information regarding objections to the report and recommendation of the Magistrate Judge.

## Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **12th** day of **February, 2025**.

                                                  /s/ KATHERINE P. NELSON
                                                  **UNITED STATES MAGISTRATE JUDGE**